UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

OCT 3 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-639-GWU

WILLIE M. HACKER,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.      See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.     If no, proceed to Step 7.     See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.     See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.   If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work.
Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to
make out a prima facie case by proving that he or she is unable to return to work.
Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th
Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide
that an individual with only off-and-on work experience is considered to have had no
work experience at all. Thus, jobs held for only a brief tenure may not form the basis
of the Commissioner's decision that the plaintiff has not made out its case. Id. at
1053.

Once the case is made, however, if the Commissioner has failed to properly
prove that there is work in the national economy which the plaintiff can perform, then
an award of benefits may, under certain circumstances, be had. E.g., Faucher v.
Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2
and analyze factors such as residual functional capacity, age, education and work
experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Willie M. Hacker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning, a learning disorder in mathematics, a major depressive disorder, a personality disorder, hypertension, a history of deep vein thrombosis in the left leg, an old blood clot of the femoral artery, hypercholesterolemia, obesity, childhood hepatitis, migraine headaches and being status post hysterectomy and status post small bowel resection. (Tr. 24). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Hacker retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 25-8).

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "light" level exertion, and also had the following non-exertional

7

impairments. (Tr. 1490). She: (1) would require the option of sitting or standing at will; (2) could not climb ladders, ropes, or scaffolds, or perform overhead work with her hands; (3) could only occasionally stoop, kneel, crouch, crawl, climb ramps or stairs, or push or pull or operate foot pedal controls with the lower extremities; (4) could have no exposure to concentrated temperature extremes; and (5) would require simple, entry-level work with 1-2-3 step procedures, no frequent changes in work routines, no rigid production schedules, no requirement for problem solving or independent planning, no fast-paced assembly lines, and only occasional interaction with co-workers, supervisors, or the general public. (Tr. 1490-1). The VE responded that such a person could perform the "light" level job of silver wrapper, with 750 jobs in Kentucky and 38,000 nationally, and the "sedentary" level job of surveillance monitor, with 2000 jobs in Kentucky and 100,000 nationally. (Tr. 1491).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence. The plaintiff had filed prior applications for benefits which were denied in a hearing decision dated August 22, 2002 (Tr. 38-48) and apparently not further pursued. The ALJ in the present case declined to reopen the prior applications, and applied res judicata through August 22, 2002. (Tr. 16).

The ALJ's choice of physical functional restrictions is supported by the results of an examination by Dr. Jules Barefoot, who examined Mrs. Hacker on May 26, 2004 and noted her history of deep vein thrombosis in the left leg. (Tr. 948). His

8

Hacker

examination showed a marked amount of edema in the left leg, despite wearing an elastic compressive dressing but, otherwise, Mrs. Hacker had a full range of motion, a normal gait, and was able to ambulate without the use of an assistive device. (Tr. 948-50). Dr. Barefoot stated that the plaintiff's ability to do "significantly strenuous work activity involving repetitive bending, squatting, climbing, and walking over extended distances does appear to be impaired" on the basis of her deep vein thrombosis with chronic edema. (Tr. 950). These factors are not inconsistent with the hypothetical question, and Dr. Barefoot was the only examining source to give an opinion regarding physical restrictions. State agency reviewers James Ramsey and P. Saranga subsequently completed physical residual functional capacity forms which are also consistent with the hypothetical question. (Tr. 952-67).

A remand will be required for further review of the plaintiff's mental status, however.

The only acceptable mental health source to give an opinion regarding the plaintiff's ability to work was Dr. Kenneth Starkey, a psychologist, who examined Mrs. Hacker on April 16, 2004. (Tr. 941). The plaintiff stated that she did not want to be around anyone (Tr. 941), and that she had a history of a psychiatric hospitalization in 2002 for treatment of depression, after being terminated from her job, having her home repossessed, and undergoing marital separation (Tr. 944). She lived alone and was able to complete activities of daily limiting, but had limited interpersonal

Hacker

relationships.  (Tr. 945).  Her medications included Zoloft, Zyprexa, and Seroquel.

(Tr. 944). Dr. Starkey's mental status examination revealed that Mrs. Hacker's mood

was dysphoric, that her affect was congruent with her mood, and that she also had

deficits for arithmetic calculations.  (Tr. 942-3).  Dr. Starkey diagnosed a moderate

major depressive disorder and a mathematics disorder, with a Global Assessment

of Functioning (GAF) score of 58.  (Tr. 945-6).  A GAF score in this range reflects

"moderate difficulty in social, occupational, or school functioning" per the Diagnostic

and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-

TR), p. 34.  At one point, Dr. Starkey indicated that the plaintiff's symptoms created

"moderate " personal distress and impairment of occupational and social functioning

but at another point, he stated that they created "marked" personal distress and

impairment of social occupational functioning.  (Tr. 945).  He also wrote that the

plaintiff likely would have moderate difficulty managing the normal stresses of day-to-

day work environment and sustaining the attention and pace necessary to complete

tasks for most everyday work settings.  (Tr. 945).  Finally, Dr. Starkey stated that

Mrs. Hacker, who reported some relief of symptoms through her treatment at the

Cumberland River Comprehensive Care Center (CRCCC), where she had received

treatment for the past two years, could experience additional improvement of her

symptoms within six months with more regular psychotherapy and continued

psychiatric care.  (Tr. 946).  However, he felt that without such treatment, her

prognosis for being able to sustain gainful public employment at any future time "remains guarded to poor." (Id.).

A summary of the plaintiff's treatment dated March 31, 2004 at the CRCCC by a licensed clinical social worker indicates that Mrs. Hacker had received treatment since July, 2001 for depression and anxiety, and had been treated by the staff psychiatrist, Dr. John Schremly, who gave diagnoses of moderately severe major depression and an anxiety disorder, as well as borderline intellectual functioning. (Tr. 763). In terms of functional limitations, she had a "moderately low" ability to maintain interpersonal functioning, physical functioning, and cognitive and intellectual functioning. (Id.). She was able to "maintain stability without any major deterioration." (Id.). The same source reported on July 30, 2004 that the plaintiff's condition was unchanged, and provided a GAF score of 60, indicative of moderate impairment per the DSM-IV-TR, p. 34. Very shortly thereafter, however, on August 23, 2004, the plaintiff's counselor at CRCCC recommended hospitalization due to the plaintiff having suicidal thoughts. (Tr. 83-4).

Mrs. Hacker was psychiatrically hospitalized at the Baptist Regional Medical Center between August 23 and August 30, 2004 with the diagnoses on admission of recurrent major depression with psychotic features and a GAF of 25-30. (Tr. 582). The treating psychiatrist on this admission, Dr. Chintamani Vora noted that part of the problem was grief, apparently related to family problems and, on discharge,

11

Hacker

noted that the plaintiff's psychotic features had resolved with additional medication, and she increased the GAF score to 40-45. (Tr. 582-3). A GAF of 40-45 still reflects "serious" impairment, however. DSM-IV-TR, p.34.

After discharge, the plaintiff continued follow-up with her psychiatrist at the CRCCC, Dr. Schremly. On September 9, 2004, her first visit after being discharged, Mrs. Hacker stated that her Paxil had been increased in the hospital, but she was now "seeing things." (Tr. 1256). Dr. Schremly also noted bluish red lesions on the plaintiff's forearms, apparently from where she was picking her skin. (Id.). He changed her medications to Zoloft and Risperdal. However, there was difficulty in obtaining the proper medication samples, and early in 2005, no Paxil was available, although the plaintiff stated that she was doing well with Seroquel at night. (Tr. 1248). Dr. Schremly gave samples of the medication that was available, Strattera. (Tr. 1248). However, the plaintiff reported to her counselor on May 13, 2005 that the Strattera did not help, and she had run out of Seroquel. (Tr. 1247). It was decided to try Wellbutrin and Vistaril, the latter because the plaintiff was able to afford it. (Id.). No functional restrictions or GAF scores were given after the plaintiff's discharge from the hospital.

The ALJ stated in his decision that he agreed with Dr. Starkey that the plaintiff would have a moderate difficulty and social occupational functioning and that she retained the adequate ability to understand and remember simple, 1-2-3 step

12

Hacker

instructions. (Tr. 23). He did not discuss Dr. Starkey's conclusion that the plaintiff would need at least six months of intensive psychiatric care and counseling in order to re-enter vocational training or the workforce. Nor did state agency psychologists who reviewed a portion of the record in May, 2004 and August, 2004 discuss this statement by Dr. Starkey, and the sources did not, in any case, have access to records from the plaintiff's August, 2004 hospitalization, or the subsequent notes from the treating sources. (Tr. 969-75).

Given the language in the Starkey report, which appears to indicate that the plaintiff could not be employed even before her condition deteriorated several months later, a remand will be required for additional evidence regarding the plaintiff's ability to perform work activity from a mental standpoint.[1]

The decision will be remanded for further consideration.

This the ⟨5⟩/ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[1]The Court notes in passing that even with the mental factors given in the hypothetical question, the VE was able to identify a relatively small number of jobs.

13